BOYLAN *v.* HOT SPRINGS RAILROAD COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 1140. Submitted October 31, 1889. — Decided November 11, 1889.

The purchaser from a railroad company, at a reduced rate of fare, of a ticket for a passage to a certain station and back, containing a contract signed by him, by which he agrees that the ticket is not good for a return passage unless stamped by the agent of the company at that station, and that no agent or employé of the company is authorized to alter, modify or waive any condition of the contract, is bound by those conditions, whether he knew them or not; and if without having attempted to have the ticket so stamped, but upon showing it to the baggage-master and gateman at the station, he has his ticket punched and his baggage checked, and is admitted to the train, and, upon being told by the conductor that his ticket is not good for want of the stamp, refuses either to leave the train or to pay full fare, and is forcibly put off at the next station, he cannot maintain an action sounding in contract against the company, or except to the exclusion, at the trial of such an action, of evidence concerning the circumstances attending his expulsion and the consequent injuries to him or his business.

THIS was an action of assumpsit against a railroad corporation by a person who, after taking passage on one of its trains, was forcibly expelled by the conductor.

At the trial in the Circuit Court, the plaintiff testified that on March 18, 1882, he purchased at the office of the Wabash, St. Louis and Pacific Railway Company in Chicago a ticket for a passage to Hot Springs and back, (which is copied in the margin,[1] and which, as was alleged in the declaration and appeared upon the face of the ticket, was then signed by him as well as by the ticket agent, and witnessed by a third person,) and upon this ticket travelled on the defendant's railroad to Hot Springs.

He was asked by his counsel when he first actually knew that the ticket required him to have it stamped at Hot Springs. The question was objected to by the defendant, and ruled out by the court.

He further testified that on April 19, 1882, when leaving Hot Springs on his return to Chicago, he went to the baggage-office and requested the baggage-master to check his baggage, and, on his asking to see the ticket, showed it to him, and he thereupon punched the ticket, checked the baggage, and gave him the checks for it ; and also that the gateman asked to see the ticket, and he showed it to him, and then passed through the gate, and took his seat in the cars. This testimony was objected to by the defendant, on the ground that no statement or action of the baggage-master, or of the gateman, would constitute a waiver of any of the written conditions of the contract ; and it was admitted by the court, subject to the objection.

---

[1] Issued by Wabash, St. Louis and Pacific Railway. Tourist's special contract. Good for one first-class passage to Hot Springs, Ark., and return, when officially stamped on the back hereof, and presented with coupons attached.

In consideration of the reduced rate at which this ticket is sold, I, the undersigned, agree to and with the several companies over whose lines this ticket entitles me to be carried, as follows, to wit:

1st. That in selling this ticket the Wabash, St. Louis and Pacific Railway Company acts as agent, and is not responsible beyond its own line.

2d. That this ticket is not transferable, and no stop-over at any intermediate point will be allowed, unless specially provided for by the local regulations of the lines over which it reads.

3d. That any alteration whatever of this ticket renders it void.

The plaintiff then testified that soon after leaving Hot Springs the conductor, in taking the tickets of passengers, came to him, and, upon being shown his ticket, said it was not good, because he had failed to have it stamped at Hot Springs; the plaintiff replied that the baggage-master, when checking his baggage, had said nothing to him about it, and he did not know it was necessary ; the conductor answered that he must either go back to Hot Springs and have the ticket stamped, or else pay full fare, but did not demand any specific sum of fare, or tell him what the fare was, and upon his refusing to pay another fare or to leave the train, forcibly put him off at the next station, notwithstanding he resisted as much as he could, and in so doing injured him in body and health.

---

4th. That it is good for going passage only five (5) days from date of sale, as stamped on back and written below.

5th. That it is not good for return passage, unless the holder identifies himself as the original purchaser, to the satisfaction of the authorized agent of the Hot Springs Railroad, at Hot Springs, Ark., within fifty-five (55) days from date of sale; and when officially signed and dated in ink, and duly stamped by said agent, this ticket shall then be good only five (5) days from such date.

6th. That I, the original purchaser, hereby agree to sign my name, and otherwise identify myself as such, whenever called upon to do so by any conductor or agent of the line or lines over which this ticket reads.

7th. That baggage liability is limited to wearing apparel not exceeding $100 in value.

8th. That the coupons belonging to this ticket will not be received for passage if detached.

9th. That my signature shall be in manuscript and in ink.

10th. That unless all the conditions on this ticket are fully complied with, it shall be void.

11th. That I will not hold any of the lines named in this ticket liable for damages on account of any statement not in accordance with this contract made by any employé of said lines.

12th. And it is especially agreed and understood by me that no agent or employé of any of the lines named in this ticket has any power to alter, modify or waive in any manner any of the conditions named in this contract.

Signature :　　　P. C. BOYLAN.
Witness :　　　H. C. KEERAN.

Date of sale, March 18th, 1882.

GEO. H. DANIELS,
*Gen'l Ticket Agent.*

On motion of the defendant, upon the grounds, among others, that this was an action of assumpsit for breach of contract, and that the plaintiff failed to produce to the conductor a ticket or voucher which entitled him to be carried on the train, and that until the plaintiff identified himself at the office at Hot Springs and had the ticket stamped and signed by the agent there, he had no subsisting contract between himself and the defendant for a return passage to Chicago, the court declined to permit the plaintiff to testify to the consequent injury to his business and to his ability to earn money, excluded all evidence offered as to the force used in removing him from the train, and as to his expulsion from the train, (although corresponding to allegations inserted in the declaration,) and directed a verdict for the defendant.

The plaintiff excepted to the rulings of the court, and, after verdict and judgment for the defendant, sued out this writ of error.

*Mr. Charles Carroll Bonney*, for plaintiff in error, submitted on his brief, citing : *State* v. *Overton*, 4 Zabr. (24 N. J. Law.) 435 ; *S. C.* 61 Am. Dec. 671 ; *Stokes* v. *Saltonstall*, 13 Pet. 181 ; *Jennings* v. *Great Northern Railway*, L. R. 1 Q. B. 7 ; *Bass* v. *Chicago & Northwestern Railway*, 36 Wisconsin, 450 ; *Butler* v. *Manchester &c. Railway*, 21 Q. B. D. 207 ; *Lamberton* v. *Connecticut Insurance Co.*, 39 Minnesota, 129 ; *Hunter* v. *Stewart*, 47 Maine, 419 ; *Goddard* v. *Grand Trunk Railway*, 57 Maine, 202 ; *Brewster* v. *VanLiew*, 119 Illinois, 554 , *Chicago & Alton Railroad* v. *Pillsbury*, 123 Illinois, 9 ; *Philadelphia & Reading Railroad* v. *Derby*, 14 How. 468 ; *Steamboat New World* v. *King*, 16 How. 469 ; *York Company* v. *Railroad Co.*, 3 Wall. 107 ; *Railroad Co.* v. *Lockwood*, 17 Wall. 357.

*Mr. G. W. Kretzinger*, for defendant in error, submitted on his. brief, citing : *Mosher* v. *St. Louis &c. Railway*, 127 U. S. 390 ; *Petrie* v. *Pennsylvania Railroad*, 42 N. J. Law (13 Vroom), 449 ; *Bradshaw* v. *South Boston Railroad*, 135 Mass. 407 ; *Frederick* v. *Marquette &c. Railroad Co.*, 37 Michigan, 342 ; *Yorton* v. *Milwaukee, Lake Shore &c. Rail-*

*way,* 54 Wisconsin, 234 ; *Shelton* v. *Lake Shore &c. Railway,* 29 Ohio St. 214 ; *Pittsburg & St. Louis Railway* v. *Nuzum,* 60 Indiana, 533 ; *McClure* v. *Philadelphia, Wilmington and Baltimore Railroad,* 34 Maryland, 532.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

This is an action of assumpsit, and cannot be maintained without proof of a breach of contract by the defendant to carry the plaintiff. The only contract between the parties was an express one, signed by the plaintiff himself as well as by the defendant's agent at Chicago, and contained in a ticket for a passage to Hot Springs and back. The plaintiff, having assented to that contract by accepting and signing it, was bound by the conditions expressed in it, whether he did or did not read them or know what they were. The question, when he first knew that the ticket required him to have it stamped at Hot Springs, was therefore rightly excluded as immaterial.

By the express conditions of the plaintiff's contract, he had no right to a return passage under his ticket, unless it bore the signature and stamp of the defendant's agent at Hot Springs ; and no agent or employé of the defendant was authorized to alter, modify or waive any condition of the contract.

Neither the action of the baggage-master in punching the ticket and checking the plaintiff's baggage, nor that of the gateman in admitting him to the train, therefore, could bind the defendant to carry him, or estop it to deny his right to be carried.

The plaintiff did not have his ticket stamped at Hot Springs, or make any attempt to do so, but insisted on the right to make the return trip under the unstamped ticket, and without paying further fare. As he absolutely declined to pay any such fare, the fact that the conductor did not inform him of its amount is immaterial.

The unstamped ticket giving him no right to a return passage, and he not having paid, but absolutely refusing to pay, the usual fare, there was no contract in force between him and the defendant to carry him back from Hot Springs.

There being no such contract in force, there could be no breach of it; and no breach of contract being shown, this action of assumpsit, sounding in contract only, and not in tort, cannot be maintained to recover any damages, direct or consequential, for the plaintiff's expulsion from the defendant's train. The plaintiff, therefore, has not been prejudiced by the exclusion of the evidence concerning the circumstances attending his expulsion and the consequent injuries to him or his business.

The case is substantially governed by the judgment of this court in *Mosher* v. *St. Louis, Iron Mountain & Southern Railway*, 127 U. S. 390, and our conclusion in the case at bar is in accord with the general current of decision in the courts of the several States. See, besides the cases cited at the end of that judgment, the following: *Churchill* v. *Chicago & Alton Railroad*, 67 Illinois, 390; *Petrie* v. *Pennsylvania Railroad*, 13 Vroom, 449; *Pennington* v. *Philadelphia, Wilmington & Baltimore Railroad*, 62 Maryland, 95; *Rawitzky* v. *Louisville & Nashville Railroad*, 40 La. Ann. 47.

Nor was anything inconsistent with this conclusion decided in either of the English cases relied on by the learned counsel for the plaintiff. Each of those cases turned upon the validity and effect of a by-law made by the railway company, not of a contract signed by the plaintiff; and otherwise essentially differed from the case at bar.

In *Jennings* v. *Great Northern Railway*, L. R. 1 Q .B. 7, the by-law required every passenger to obtain a ticket before entering the train, and to show and deliver up his ticket whenever demanded. The plaintiff took a ticket for himself, as well as tickets for three horses and three boys attending them, by a particular train, which was afterwards divided into two, in the first of which the plaintiff travelled, taking all the tickets with him; and when the second train was about to start, the boys were asked to produce their tickets, and, being unable to do so, were prevented by the company's servants from proceeding with the horses. An action by the plaintiff against the company for not carrying his servants was sustained, because the company contracted with him only, and delivered all the tickets to him; and Lord Chief Justice Cock-

burn, with whom the other judges concurred, said : "It is unnecessary to determine whether, if the company had given the tickets to the boys, and the boys had not produced their tickets, it would have been competent for the company to have turned them out of the carriage."

In *Butler* v. *Manchester, Sheffield & Lincolnshire Railway*, 21 Q. B. D. 207, the ticket referred to conditions published by the company, containing a similar by-law, which further provided that any passenger travelling without a ticket, or not showing or delivering it up when requested, should pay the fare from the station whence the train originally started. The plaintiff, having lost his ticket, was unable to produce it when demanded, and, refusing to pay such fare, was forcibly removed from the train by the defendant's servants. The Court of Appeal, reversing a judgment of the Queen's Bench Division, held the company liable, because the plaintiff was lawfully on the train under a contract of the company to carry him, and no right to expel him forcibly could be inferred from the provisions of the by-law in question, requiring him to show his ticket or pay the fare; and each of the judges cautiously abstained from expressing a decided opinion upon the question whether a by-law could have been so framed as to justify the course taken by the company.

*Judgment affirmed.*